822 So.2d 353 (2002)
Jimmy VOYLES a/k/a Jimmy Dale Voyles, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00535-COA.
Court of Appeals of Mississippi.
July 16, 2002.
*355 William C. Stennett, Tupelo, attorney for appellant.
Office Of The Attorney General, by Scott Stuart, attorney for appellee.
Before SOUTHWICK, P.J., BRIDGES, and BRANTLEY, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Jimmy Voyles was convicted of one count of fondling a child who was under sixteen years of age. He appeals alleging that the circuit court erred in not granting his motion for directed verdict, in allowing the State to amend the indictment the day of trial to add an habitual offender charge, and in allowing hearsay testimony. He also argues that his trial counsel rendered ineffective assistance. We disagree and affirm.

STATEMENT OF FACTS
¶ 2. Testimony at trial revealed that in late July 1999, Maria Flores first became suspicious that her four-year-old daughter might have been fondled. After her daughter had been playing outside, Mrs. Flores attempted to remove some leaves from her daughter's shorts. The child told her mother not to touch her there. Mrs. Flores became concerned and asked her daughter if she had been touched inappropriately by anyone. The child answered that she had not.
¶ 3. Several days later, Mrs. Flores took her daughter to the home of her sister, Erika Flores. After telling Erika Flores about the incident with her daughter, both Maria and Erika questioned the child. Maria and Erika asked the child several times if she had been touched by any of the men in their family, whom they proceeded to name, with whom the child might have had contact. The child finally answered that her step-grandfather, Jimmy Voyles, had touched her "pee pee" with his finger and that he had hurt her. The child demonstrated with her hands what Voyles had done. The child told her mother and aunt that the touching occurred while she was spending the night with her father and two sisters at Voyles' trailer. The child told her mother that during the incident that Voyles promised her candy and potato chips if she remained silent. The child also stated that Voyles told her not to speak of the incident and, if she was ever asked had she been fondled, to claim it was her father.
¶ 4. The child was interviewed by Brenda DePriest, a social worker, and Teresa Broadway, an investigator at the Lee County Sheriffs Department. The child was examined at the emergency room of the North Mississippi Medical Center the day she told her mother about the fondling. The child was referred to another physician, Dr. Linda Chidester, who had experience with child molestation cases. Dr. Chidester concluded after her examination that the child had been sexually *356 abused. However, Dr. Chidester could not determine when the abuse took place.
¶ 5. Voyles was indicted for the fondling of his four-year-old step-granddaughter. The indictment alleged that the fondling occurred sometime between February and May of 1999. On October 30, 2000, the day before trial and over the objection of Voyles, the indictment was amended to charge Voyles as an habitual offender. At the conclusion of the one-day trial, Voyles was convicted of one count of fondling a child under sixteen years of age. Voyles was sentenced as an habitual offender to a term of life in prison with no possibility of early release. During the pendency of his motion for judgment notwithstanding the verdict or for a new trial, Voyles obtained new counsel. The motion was denied. Voyles' appeal was deflected here. Miss. Code Ann. § 9-4-3 (Supp.2001).

DISCUSSION

1. Strength of Evidence

a. Sufficiency
¶ 6. Voyles argues that the circuit court erred in denying his motion for directed verdict made at the close of the State's case and his motion for judgment notwithstanding the verdict. Both of these motions "are predicated upon the idea that the evidence simply does not justify a verdict of guilt beyond a reasonable doubt." Washington v. State, 800 So.2d 1140, 1144 (Miss.2001). When reviewing the denial of such motions, an appellate court views the evidence in a light most favorable to the jury's verdict. Id. Only if the court concludes "that no reasonable person could have found the accused guilty beyond a reasonable doubt" will "the verdict ... be set aside." Id.
¶ 7. The crime for which Voyles was convicted is this:
[a]ny person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of sixteen (16) years, with or without the child's consent ... shall be guilty of a felony.
Miss.Code Ann. § 97-5-23(1) (Rev.2000). The State had to prove that Voyles was over the age of eighteen, that the child was under the age of sixteen, that Voyles touched her with either his hands or another part of his body for the purpose of gratifying his lust or "depraved licentious sexual desire," and that the act occurred between February and May 1999.
¶ 8. The ages of the accused and victim were proved. The five-year-old child testified that Voyles "touched my pee pee," and that no one else had done so. It was explained by other witnesses at trial that the child used the term "pee pee" to refer to her vaginal area. Testimony from the victim of a sex crime, even if not corroborated, is sufficient to prove guilt absent discrediting or contradiction by other credible evidence. Williams v. State, 757 So.2d 953, 957 (Miss.1999).
¶ 9. Dr. Linda Chidester examined the child and stated that the opening in the child's hymen was two to three times larger than normal for a child her age and was consistent with sexual abuse. Dr. Chidester stated that she could not determine when the abuse took place. The testimony offered by the various witnesses, based on statements made by the child, was conflicting as to how many times Voyles may have fondled the child and whether the child was forced to touch Voyles.
¶ 10. We cannot say that the evidence presented was such that no reasonable juror could have found Voyles guilty. *357 Therefore, the evidence presented was sufficient.

b. Weight
¶ 11. Voyles also claims that the jury's verdict was against the overwhelming weight of the evidence. "This Court will not order a new trial `unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.'" Robinson v. State, 662 So.2d 1100, 1105 (Miss.1995). Also, this Court must accept as true all evidence and reasonable inferences drawn from that evidence favorable to the State. Robinson, 662 So.2d at 1105.
¶ 12. After reviewing the record, we are not convinced that allowing the jury's verdict to stand would be to sanction an unconscionable injustice.

2. The Indictment

a. Date of Offense
¶ 13. Voyles argues that lack of specific dates in the indictment deprived him of the ability to prepare an adequate defense of either alibi or impossibility. Voyles argues that the "Supreme Court concluded that a more definite time frame is an essential part of a defendant's right and ability to adequately prepare a defense, especially an alibi and impossibility defense," citing Morris v. State, 595 So.2d 840 (Miss.1991). This statement by Voyles is not entirely accurate.
¶ 14. In Morris, the defendant was indicted for molesting a fifteen-year-old girl. Morris, 595 So.2d at 841. The indictment alleged that the molestation occurred between March and May of 1986. Id. Morris argued that more specific dates should be given so that he could prepare an alibi defense and requested such by way of motion. Id. at 842. The Supreme Court stated that defendant should "be given the specific date if at all possible." Id. The Court also noted that Mississippi Criminal Procedure Rule 2.05 provided that failure to provide the correct date does not render an indictment defective. Id. (this rule is now URCCC 7.06(5)). The Court found that "the victim's testimony amply illustrates the fact that the State could not narrow the time frame any more than it did." Morris, 595 So.2d at 842.
¶ 15. The child in Morris was fifteen years of age and was unable to recall the specific dates on which the molestation occurred. In the present case, the child was only four years of age when the fondling occurred. Several witnesses testified that a child of the victim's age is unable to comprehend days, weeks, and months as do older children and would be unable to say exactly when the incident occurred. The child's mother, Maria, testified that during the period between February and May 1999 that she and her husband were separated and that her husband was living with Voyles. She testified that her husband had visitation during this period and would take the children with him to Voyles' trailer. Mrs. Flores reasoned that the incident must have occurred during her separation from her husband. Here, as in Morris, the State was unable to provide a more specific date. We find no error.

b. Amendment
¶ 16. The State on the day before trial was allowed to amend the indictment to allege habitual offender status. Voyles claims unfair surprise.
¶ 17. These were the prior convictions. Voyles pled guilty to one count of burglary and one count of larceny in June 1969. In 1977, Voyles was convicted of capital murder and sentenced to death. The conviction was affirmed. Voyles v. State, 362 *358 So.2d 1236 (Miss.1978). However, Voyles, through a federal habeas corpus action, was successful in obtaining a new trial after it was found his trial counsel rendered ineffective assistance. See Voyles v. Watkins, 489 F.Supp. 901, 912 (N.D.Miss. 1980). Shortly before the new trial began, Voyles agreed to plead guilty to one count of manslaughter. In this matter, Voyles argued at trial that he should be provided the services of an investigator to determine if these were actual convictions.
¶ 18. A circuit court rule allows for the amendment of an indictment as to form but not substance. URCCC 7.09. The rules also allow an indictment to be amended to charge an individual as an habitual offender. Id. Amendments are allowed as long as the "defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." Id. The "amending [of] indictments to include a habitual offender charge does not affect the substance of the crime charged in any way" but "only the sentencing of the crime." Cox v. State, 793 So.2d 591, 597 (Miss.2001). Such an amendment has been found not to affect preparations of a defense for trial. Adams v. State, 772 So.2d 1010, 1021 (Miss.2000).
¶ 19. It is true that the State, for whatever reason, waited more than a year after the indictment was originally returned to move for an amendment. It is also true that the motion was made the day of trial. However, the defense made a motion in limine the day before trial to bar any discussion of Voyles' previous convictions. Voyles' motion indicates that the State provided him with a copy of his "rap sheet." The motion also requested that these convictions not be used to impeach him should he choose to testify. We find no error in the amendment.

c. Form
¶ 20. As a separate defect, Voyles argues that the habitual offender portion of his indictment improperly was placed after the constitutionally required words "against the peace and dignity of the state." MISS. CONST. art. VI, § 169. The original indictment had ended with that statement.
¶ 21. Voyles cites a precedent in which a similar amendment, similarly placed, was found to have created reversible error. McNeal v. State, 658 So.2d 1345, 1349-50 (Miss.1995). However, slightly more than three months after McNeal, the Supreme Court reversed itself. Brandau v. State, 662 So.2d 1051 (Miss.1995). As in McNeal, the indictments charging Brandau with kidnaping, armed robbery, and of being a habitual offender failed to conclude with the words "against the peace and dignity of the state." Brandau, 662 So.2d at 1053. The Court found that Brandau's failure to object to the form of his indictments waived the issue. Id. at 1054. Any defect such as this had to be brought to the attention of the trial court by a demurrer (or perhaps by motion). Id.
¶ 22. Voyles did not raise this objection to the indictment. This issue was waived.

3. Hearsay
¶ 23. Prior to trial, Voyles filed a motion in limine seeking to suppress that portion of any testimony that consisted of statements made by the child concerning the fondling incidents. Voyles argued that these possible hearsay statements were "immaterial and unnecessarily prejudicial." Voyles asserted that "an ordinary objection during the proceedings, even if sustained, would not remove such [prejudicial] effect...." In addition to requesting this prohibition, Voyles requested a hearing on this possible hearsay testimony pursuant *359 to our rules of evidence. See M.R.E. 803(25).
¶ 24. The trial judge has discretion to either accept or reject evidence offered by the parties. Austin v. State, 784 So.2d 186, 193 (Miss.2001). "That discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will only be had when an abuse of discretion results in prejudice to the accused." Austin, 784 So.2d at 193-94.
¶ 25. One hearsay exception is known as the "Tender Years Exception":
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
M.R.E. 803(25). The rule's comments list several factors, sometimes referred to as the "Wright factors," that a trial court should consider to determine whether there is a "substantial indicia of reliability." See Idaho v. Wright, 497 U.S. 805, 821-22, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Those suggested factors are
(1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.
M.R.E. 803(25) cmt. The comments also state that "[a] finding that there is a substantial indicia of reliability should be made on the record." Id.
¶ 26. A hearing was held prior to trial. The following witnesses testified at the hearing: Maria Flores (the child's mother), Erika Flores (child's aunt), Teresa Broadway (sheriff's investigator), Debra Voyles (the child's grandmother and wife of the defendant), and Shae Sheffield (child's aunt). A second hearing was held during trial to consider the possible testimony of the following: Brenda DePriest (social worker) and Dr. Linda Chidester (examining physician). During both hearings, the witnesses were examined by the State and then cross-examined by counsel for Voyles.
¶ 27. At the close of the first hearing, the circuit court judge examined each of the factors listed in the comment to the evidentiary rule. The judge found that there was "no indication at all that this four-year-old had any reason to lie." The child was found to be an "intelligent four-year-old child." The judge found that more than one person heard the statements made by the child. The judge stated that there was some question as to the spontaneity of the child's statements to Maria and Erika Flores. The trial judge found none of the questions used by Maria or Erika Flores to elicit the identity of the perpetrator were suggestive. The judge found that the questions asked by Teresa Broadway, the sheriff's investigator, were *360 not suggestive as alleged by Voyles. The judge found that the child's statements to Shae Sheffield and Debra Voyles were spontaneous.
¶ 28. The judge did state that he was "concerned" about the timing of the statements made by the child. The offense occurred between February and May of 1999; Breanna gave no indication that she might have been fondled until July 1999. The judge found nothing in the relationships among the child and the witnesses that would indicate anything other than "reliability." The trial judge found that the child "would certainly be able to recall what happened and who the perpetrator was." There was "nothing to indicate that any of these people are uncertain ... [that] the statements were in fact made to them." Each witness was cross-examined by Voyles' counsel, and the trial judge found nothing lacking in credibility. The trial judge also noted that Maria Flores asked the child at least three times who had touched her and that Breanna ultimately named Voyles.
¶ 29. The trial judge found it "unlikely" that the child fabricated her allegation against Voyles. The trial judge stated he "believ[ed] the threat to keep it quiet is a normal thing that prohibits children from telling what happened to them because of fear of what might happen." The witnesses related the child's assertion that Voyles told her not to say anything because her mother would be angry with her and that if she did say anything, she was to say her father had fondled her. The judge stated that the delay in reporting was "far outweighed by the other indicia of reliability, and the Court finds that there is sufficient indicia of reliability at this point to allow the statements...."
¶ 30. The circuit court judge made similar, although not quite as extensive, findings as to the testimony of both DePriest and Chidester. The judge stated that the child's "recollection was probably remote, as far as being faulty, and particularly under the circumstances." However, the judge did find the statements to have substantial indicia of reliability.
¶ 31. The child, five years of age at the time of trial, testified. Although at first reluctant, the child stated that while spending the night at Voyles' home with her father that Voyles fondled her. The child also testified that Voyles was the only person that had touched her in that manner. The child was asked by Voyles' counsel if anyone had ever taught her the hand gesture she used to describe the fondling. The child stated no one taught her the gesture. She also stated that she told her mother, Maria Flores, her aunt, Erika Flores, and her grandmother, Debra Voyles, about the incident.
¶ 32. The trial judge did not abuse his discretion in allowing the testimony of these witnesses.

4. Ineffective Assistance of Counsel
¶ 33. Voyles argues that his trial counsel provided him with ineffective assistance of counsel by not insuring "the adversarial balance at trial." Voyles claims there was no "adversarial balance" because the State presented ten witnesses, and his counsel called only him as a witness. We count eight witnesses for the State at trial, but regardless, there was an imbalance. Voyles claims that he "strongly suggested" that other witnesses be called, but that counsel failed to do so. Voyles claims that he provided counsel with a "verbal compilation of several witnesses" that "would have supported his statements, character, and position of innocence." Nothing in the record names these witness or summarizes their possible testimony.
*361 ¶ 34. Voyles also asserts that his counsel should have engaged the services of "child abuse doctors, psychiatrists, and other specialists that could provide further information relating to the contact with [the child], particularly when it happened, and if it was possible that [the child] was not truthful in her testimony." We take this statement, not as an admission of "contact" with the child by Voyles, although a jury has found that to be the case, but only an assertion that his trial counsel should have offered expert testimony of some sort.
¶ 35. The two prongs of the test used to examine ineffective assistance of counsel claims are: (1) "the party must show that counsel's performance was objectively deficient" and (2) "the party must show that, but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different." Ward v. State, 708 So.2d 11, 14 (Miss.1998). It is presumed that counsel "acted competently and the effectiveness of efforts are determined on the basis of the totality of the circumstances." Kirksey v. State, 728 So.2d 565, 567 (Miss. 1999).
¶ 36. There is no requirement that defense counsel call witnesses in a number equal to that called by the State. It is not uncommon in criminal trials for the defense to call only the defendant as a witness or to call no witnesses at all. As for the assertion that trial counsel failed to call certain witnesses to support his claim of innocence, it is only too convenient that Voyles provided trial counsel with the identity of these witnesses by way of "verbal compilation." The record contains ten letters from various individuals, some writing more than once, asserting either that Voyles did not commit the crime and was "set-up" or is a "great person." These letters were made part of the record by Voyles' newly-retained appellate counsel at an appeal bond hearing and not provided to his trial counsel during trial.
¶ 37. We find that on this direct appeal Voyles has failed to demonstrate that trial counsel's performance was deficient and that counsel's performance prejudiced his defense. As an appellate court, we may only consider the record as it is before us now. That certain witnesses should have been called to support Voyles' claim of innocence is an inquiry properly conducted upon petition for post-conviction relief. Williams v. State, 791 So.2d 895, 899 (Miss.Ct.App.2001).
¶ 38. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY, FIRST JUDICIAL DISTRICT, OF CONVICTION OF ONE COUNT OF FONDLING AND SENTENCE AS AN HABITUAL OFFENDER TO A TERM OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.