# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-KA-01267-SCT

*LEVI L. JENKINS a/k/a LEVI JENKINS a/k/a LEVI LEVERNE JENKINS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/14/2011 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL W. CROSBY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/31/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.    Levi Jenkins was indicted and tried in the Circuit Court of Pearl River County on two counts of sexual battery and one count of statutory rape against his then-five-year-old niece. He was convicted only of fondling, a lesser-included offense of the second count of sexual battery. Jenkins timely appealed, raising various issues. Finding his arguments to be without merit, we affirm the judgment of conviction of the Circuit Court of Pearl River County.

# FACTS

¶2.     In the summer of 2007, V.R. and her mother were living in V.R.'s grandfather's home along with various cousins and uncles, including V.R.'s uncle, Levi Jenkins. V.R. was then five years old.[1] Jenkins, who turned nineteen on July 5, 2007, babysat V.R. that summer while her mother was at work.

¶3.     At trial, V.R. testified that, on various occasions, Jenkins would take her to a shed in the back yard, claiming to have a birthday present for her. Once inside, Jenkins would stand V.R. up or place her on top of the washing machine, unzip his pants, pull down her pants and underwear, touch her "private parts" with both his hands and his "thing," and force V.R. to touch his "thing" with her mouth. V.R. stated that she would resist and that Jenkins's penis would only touch the side of her vagina, and that his penis did not enter her mouth. V.R. testified that she saw "white stuff" come out of Jenkins's "thing," and that he would use a towel from the dirty clothes to clean it up. Further, V.R. testified that Jenkins made her look at "nasty magazines" and "drink something only adults drink," and that he told her he would "whoop her" if she told anyone about what he had done.

¶4.     According to V.R., this abuse happened multiple times between June and July of 2007, before her grandfather died and before August of 2007. However, she said one specific incident happened on July 16, 2007, which she testified she remembered because she wrote it in her diary. V.R. eventually told her stepmother, Melanie Lynn Frierson, about the sexual abuse because the "guilt was eating [her] alive." Fierson then notified the police.

---

[1] V.R. was nine years old at the time of the trial.

¶5.	Along with Frierson, who testified that V.R. had told her that she almost got raped by Jenkins and that Jenkins made her "suck his thing" in the shed, V.R. also described the alleged abuse to the following witnesses during August of 2007: Christian Clark, a forensic interviewer employed by the Child Advocacy Center in Gulfport, Mississippi; Kim Gutherz, a registered nurse who examined V.R. at the Care Clinic; and Rhonda Poche, a deputy for the Pearl River Sheriff's Department. Each of these witnesses testified to similar accounts that V.R. had given to them. Clark found that V.R.'s behavior was consistent with a child who had been sexually abused, as V.R. was not only able to describe sexual acts, but also was able to describe her experience of those acts. Poche testified that, during the police investigation, V.R. seemed embarrassed and kept her head down while she talked. Gutherz, however, testified that a physical examination did not reveal any bleeding or scarring, and that she could not physically conclude whether or not V.R. had been sexually abused.

¶6.	The jury returned a verdict finding Jenkins guilty of the lesser-included-offense of fondling in Count II, but not guilty as to sexual battery in Count I and statutory rape in Count III. Jenkins was sentenced to serve a term of fifteen years in prison, ordered to pay a $1,000 fine and to register as a sex offender for the rest of his life, and he was prohibited from having any contact with V.R. or her family. After the trial court denied Jenkins's Motion for Judgment Notwithstanding the Verdict or in the Alternative a New Trial, Jenkins timely appealed. He now argues that a discovery violation occurred when V.R. testified to having a diary that was not disclosed during discovery. Further, he claims the indictment was fatally flawed because it did not specify the dates of the alleged abuse and because V.R.'s testimony varied the dates of the alleged abuse. Finally, he argues that there was insufficient evidence

3

to support both the lesser-included-offense instruction on fondling as well as the conviction of fondling, and that the verdict was against the overwhelming weight of the evidence.

## DISCUSSION

**I.      Whether the trial court erred in ruling that no discovery violation had occurred.**

¶7.      Jenkins first argues that the trial court erred by ruling that no discovery violation had occurred, after V.R. had made reference during her direct examination to a diary which was not disclosed in discovery. Jenkins now contends that the court should have compelled the State to produce the diary and that he is entitled to a new trial under this Court's decision in *Box v. State*, 437 So. 2d 19 (Miss. 1983). He argues the diary may have contained exculpatory evidence, and that a recess from the proceedings should have been granted to allow his counsel to review the diary.

¶8.      To establish that the abuse occurred during the period alleged in the indictment, the State asked V.R. the following questions:

Q.      Did any of these things happen close to your birthday?

A.      Yes, ma'am.

Q.      Okay. Before August of that year?

A.      (Witness nods in the affirmative). Between June and July. It was – I think the last time it happened it was July 16th.

Q.      Why do you remember that day so specifically?

A.      Because I wrote it in my diary a long time ago.

Jenkins's counsel immediately approached the bench and argued that a discovery violation had occurred because the prosecution had not disclosed a diary during discovery. The

prosecution stated it did not have such a diary and contended that it could not "possibly predict every single thing a witness is going to say on the stand." Jenkins's counsel argued he had been "blasted with something that's not in discovery . . . that may have exculpatory evidence," and asked to reserve a motion to "see what was said about the diary[,] [a]nd then I may have a motion or something may lead to possible mistrial or something." The trial judge granted this request but also accepted the State's explanation that it did not have any knowledge of a diary. The trial judge instructed the State to move on to other questions, and no further testimony regarding the diary was given.

¶9.     The following day, Jenkins renewed his motion and requested an opportunity to interview V.R. about the diary or to examine the diary itself. The trial judge allowed a continuing objection, but explained why he overruled Jenkins's motion:

> I believe the utterance from the alleged victim reflected that she knew the date of the last incident because of her diary. And I ruled at that time that just for clarification that since the State did not offer any diary, did not know of any diary, it may or may not exist, or ask the witness about any diary that she may have kept, that I overruled your motion.

The trial judge reiterated that the diary was not being offered into evidence, and further stated that "the *Box* factors are not in play, because you're not even alleging that the State knew about any existence of any diary . . . but we do agree that it was not intentional failure to provide something during discovery that does exist." The prosecution stated that it did not seek to introduce any evidence in regard to the diary.

¶10.    A trial court's rulings on discovery matters, including whether or not a discovery violation has occurred, are reviewed for abuse of discretion. *Montgomery v. State*, 891 So. 2d 179, 182 (Miss. 2004). In *Box v. State*, we granted reversal where the State knowingly

5

withheld the identity of a key witness from the defendant before trial, and we set forth guidelines for how a trial judge should proceed after a discovery violation. ***Box***, 437 So. 2d at 21-26. However, in ***Mills v. State***, we affirmed that no discovery violation occurred where the State did not disclose, prior to trial, the potential testimony of a witness of whom it had no knowledge until she came forth during the trial. ***Mills***, 813 So. 2d 688, 692 (Miss. 2002). Here, the trial judge was faced with a situation analogous to ***Mills***, in that both sides claimed to be unaware that V.R. had kept a diary.

¶11. The procedure a trial judge must follow when a discovery violation is alleged at trial is set forth in Rule 9.04(I) of the Uniform Rules of Circuit and County Court Practice, which states that:

> If during the course of trial, the prosecution ***attempts to introduce evidence which has not been timely disclosed*** to the defense ***as required by these rules***, and the defense objects to the introduction for that reason, the court shall act as follows:
>
> 1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
>
> 2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
>
> 3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.

URCCC 9.04(I) (emphasis added). The threshold determination under Rule 9.04(I), then, is whether the prosecution attempts to introduce evidence which it was required to timely

disclose under Rule 9.04.[2] The trial judge found that "the State did not offer any diary, did not know of any diary, it may or may not exist, or ask the witness about any diary that she may have kept." If the State did not attempt to introduce a diary, the existence of which it was totally unaware and which it could not have disclosed previously, the trial judge was not required under Rule 9.04(I) to allow Jenkins to interview V.R. regarding the diary or to order the diary's production. *See Coleman v. State*, 915 So. 2d 468, 475 (Miss. Ct. App. 2005) (holding that Rule 9.04(I) "only applies when there has been a discovery violation, and the trial court in the case sub judice found that no discovery violation had occurred").

¶12.    We do note our decision in *Russell v. State*, 789 So. 2d 779 (Miss. 2001). There, a witness testified to facts tending to disprove the defendant's insanity defense which the State learned of the morning of trial but did not disclose to the defendant beforehand. *Id.* at 784-85. The trial judge denied the defendant's request to interview the witness about the undisclosed testimony because he found that no discovery violation had occurred and that, as such, the procedures set forth in *Box* and Rule 9.04(I) were not triggered. *Id.* at 786. We stated that there is "no requirement . . . that the trial court find a discovery violation before allowing the defendant to interview the witness and proceed through the steps outlined" in *Box* and its

---

[2] Rule 9.04(A) requires the prosecution to disclose any relevant, physical evidence and exculpatory material "the existence of which is known or by the exercise of due diligence may become known to the prosecution." URCCC 9.04(A). While Jenkins's counsel speculated at trial that some investigator may have known of the diary even if the prosecutor did not, there is no evidence that the existence of a diary was known to the State or could have been known by the exercise of due diligence. Further, without having to risk eliciting damaging testimony regarding the diary's contents, Jenkins still could have questioned V.R. during cross-examination about whether she had ever discussed a diary with the prosecution or an investigator before trial, but chose not to.

progeny, and urged trial courts "to follow the dictates of common sense on a case-by-case basis when faced with such a situation." *Id.* Because the State admitted on appeal that it had committed a discovery violation, we held that:

> Where, as here, the defendant is surprised with new evidence and where, as here, *that evidence was known to the prosecution*, though only for a short time, and where, as here, that evidence is detrimental to a central theory of defense, the defendant is entitled, at the very least, to an interview with the witness. The consumption of "10, 15, or 30 minutes for the attorney to investigate the case" is a small price to pay to insure that the rule of law is followed.

*Id.* (emphasis added).

¶13. This case differs from *Russell*, in which a discovery violation undoubtedly occurred. Here, the State denied having any knowledge of the diary before V.R.'s testimony and did not attempt to introduce the diary. At the very least, *Russell* affords a trial judge discretion in determining whether to allow an investigatory interview or inspection of newly disclosed evidence where no discovery violation has occurred. We are in no better position than the trial judge to determine whether the State knew of the existence of a diary. We cannot say he abused his discretion in denying Jenkins an opportunity to interview V.R. or inspect the diary where neither side was aware of the diary prior to V.R.'s testimony and where the existence of the diary itself was in doubt. This issue is without merit.

**II. Whether the indictment was fatally flawed due to the range of dates given in Count II.**

¶14. Jenkins further argues that Count II of the indictment was fatally flawed because the dates of the offense included in the indictment differed from the dates V.R. testified to at trial. Count II of the indictment alleged that the abuse occurred "between the dates of July

8

1, 2007 and August 5, 2007," whereas V.R. testified that it occurred "[b]etween June and July. . . . I think the last time it happened it was July 16th." One of seven items required for a legally sufficient indictment is the date on which the alleged crime occurred, but "[f]ailure to state the correct date shall not render the indictment insufficient." URCCC 7.06; *Havard v. State*, 928 So. 2d 771, 801 (Miss. 2006). We also have held that "a specific date in a child sexual abuse case is not required so long as the defendant is 'fully and fairly advised of the charge against him.'" *Eakes v. State*, 665 So. 2d 852, 860 (Miss. 1995) (quoting *Morris v. State*, 595 So. 2d 840, 842 (Miss. 1991)).

¶15.   In *Voyles v. State*, the defendant's indictment for fondling a four-year-old girl stated that the incident occurred "sometime between February and May of 1999." *Voyles*, 822 So. 2d 353, 356 (Miss. Ct. App. 2002). The defendant complained the range of dates deprived him of the ability to present an alibi or impossibility defense. *Id.* at 357. The Court of Appeals pointed out that the four-year-old child was "unable to comprehend days, weeks, and months as do older children and would be unable to say exactly when the incident occurred,"and held there was no error where the State could not possibly provide a more specific date. *Id.*

¶16.   Count II of the indictment fully notified Jenkins of the charges against him and is legally sufficient. Even though the dates varied slightly between the indictment and V.R.'s testimony, the rules clearly state that failure to include the specific date in the indictment is not enough to render an indictment legally insufficient, and we previously have not required a specific date in a case of sexual abuse of a child. As in *Voyles*, a child who was five years old at the time of the abuse should not be expected to recall the exact dates that abuse

9

occurred. Ultimately, however, V.R. was able to testify that the abuse occurred in July, within the time frame specified in the indictment, referencing one occurrence of abuse on July 16. Jenkins's argument is without merit.

**III.** **Whether there was sufficient evidence to support a lesser-included-offense instruction on fondling and for the trial judge to deny Jenkins's motions for directed verdict and judgment notwithstanding the verdict, and whether the trial court erred in denying his motion for a new trial.**

¶17. Jenkins combines these issues into one argument in his brief. He argues that there was insufficient evidence for the trial judge to grant the State's lesser-included-offense instruction on fondling and to deny his motions for directed verdict and judgment notwithstanding the verdict (JNOV). This argument is based solely on his assertion that the element of lustful intent in fondling could not be proven by the evidence presented at trial.

*A.* *Whether the trial court erred in giving Jury Instruction 13*

¶18. Jenkins argues the trial court erred in giving Jury Instruction 13, a lesser-included-offense instruction regarding fondling under Count II. A lesser-included-offense instruction may be given where there is some evidence supporting the lesser-included offense. *Gause v. State*, 65 So. 3d 295, 300 (Miss. 2011). Fondling is the handling, touching, or rubbing of a child under the age of sixteen by someone over the age of eighteen with the hands or any other body part for the purpose of gratifying his or her lust or indulging his or her depraved licentious sexual desires. Miss. Code Ann. § 97-5-23(1) (Rev. 2006). Sexual battery under Section 97-3-95(1)(d) differs from fondling in this case only in that it requires evidence of sexual penetration and does not require a showing of lustful or licentious intent. Miss. Code Ann. § 97-3-95 (Rev. 2006). We previously have held that fondling under Section 97-5-23(1)

10

is a lesser-included offense of sexual battery under Section 97-3-95. *Friley v. State*, 879 So. 2d 1031, 1035 (Miss. 2004).

¶19. Jenkins's only argument is that no evidence was presented that he touched V.R. in order to gratify his lust or indulge his depraved licentious sexual desires. He claims that lustful purpose was not shown because there was no testimony at trial that he moaned, touched himself, or moved back and forth during the incidents. In *Friley*, we held that the element of lustful intent could be proved by inferences drawn from the circumstances of the situation. *Friley*, 879 So. 2d at 1035. We stated that by "the very acts of grabbing [the victim], touching her genital area, and touching himself, he was gratifying his lust. There is no other reason why [the defendant] would have performed these acts." *Id.* Similarly, in *Goodnite v. State*, we held that evidence of attempting to and succeeding in pinching a child's private parts was sufficient for a reasonable jury to find the defendant acted with a lustful purpose. *Goodnite*, 799 So. 2d 64, 69 (Miss. 2001).

¶20. Ample evidence supported the lesser-included offense of fondling, and the intent element of fondling can be inferred from Jenkins's actions. V.R. testified that Jenkins removed her pants and underwear, touched her "private part" with both his fingers and penis, and forced her to touch his penis with her mouth, and that "white stuff" would come out of his penis. The very fact that Jenkins did these things supports a reasonable inference that he was gratifying his lust, and no reasonable juror possibly could have found otherwise. Sufficient evidence supported the lesser-included offense of fondling, and the trial court did not err in granting Jury Instruction 13.

B. *Whether the trial court erred in denying Jenkins's motions for directed verdict and judgment notwithstanding the verdict.*

¶21. Jenkins further argues the trial court erred in failing to grant his motions for a directed verdict and judgment not withstanding the verdict. Again, his only argument is that the State did not provide any evidence to satisfy the lustful or licentious intent element of fondling. Both motions for a directed verdict and judgment notwithstanding the verdict "challenge the legal sufficiency of the evidence." *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). When reviewing the denial of these motions, we must accept as true the credible evidence consistent with the verdict, draw all reasonable inferences from the evidence in favor of the prosecution, and respect the jury's judgment regarding the weight and credibility of the evidence. *Id.* If "reasonable fair-minded men in the exercise of impartial judgment" could have concluded that the defendant was guilty beyond a reasonable doubt, the evidence is sufficient. *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶22. V.R.'s testimony at trial, which we need not repeat again, was sufficient to establish the elements of fondling beyond a reasonable doubt. "[T]he unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where the testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime." *Cross v. State*, 759 So. 2d 354, 356 (Miss. 1999). V.R.'s therapist testified that V.R.'s conduct was consistent with one who is the victim of a sex crime. Moreover, V.R. also gave consistent statements to her stepmother, a deputy sheriff, and a nurse, who each testified to her

description of the abuse at trial. Viewing all this evidence in the light most favorable to the State, reasonable minds could have found Jenkins guilty beyond a reasonable doubt. The trial court did not err in denying these motions.

> C. *Whether the trial court erred in denying Jenkins's motion for a new trial.*

¶23. Lastly, Jenkins argues that the trial court erred in denying his motion for a new trial. In reviewing the denial of a motion for a new trial, the evidence must be viewed in the light most favorable to the verdict, and a new trial should be granted only in those "exceptional cases in which the evidence preponderates heavily against the verdict" and is "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (quoting *Amiker v. Drugs for Less, Inc.*, 796 So. 2d 942, 947 (Miss. 2000)).

¶24. Several witnesses, including V.R. herself, testified to the elements of the crime as stated above, while Jenkins called no witnesses of his own and points to no evidence in the record which preponderates heavily against the verdict. Jenkins's brief includes no argument as to why the verdict was against the overwhelming weight of the evidence, relying only on his argument that the evidence was insufficient to support the verdict. We have "repeatedly held that where the appellant provides no meaningful argument in support of an assignment of error raised, the issue is waived on appeal." *Duncan v. State*, 939 So. 2d 772, 784 (Miss. 2006). Regardless, when viewed in the light most favorable to the verdict, the evidence was such that allowing the verdict to stand would not sanction an unconscionable justice. The trial court did not err in denying Jenkins's motion for a new trial.

13

¶25. Finding each of Jenkins's assignments of error to be without merit, we affirm the judgment of conviction of the Circuit Court of Pearl River County.

¶26. **COUNT II**: **CONVICTION OF LESSER INCLUDED OFFENSE OF FONDLING AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶27. The majority rejects Jenkins's arguments concerning the diary, treating the issue as a discovery violation. I agree that there can be no discovery violation if a witness testifies at trial about a matter previously unknown to either party; but the absence of prior knowledge does not prohibit the trial court from granting appropriate remedies to a disadvantaged party. The trial court did not consider Jenkins's arguments that V.R.'s testimony was not a simple matter of an alleged "discovery violation." Thus, the wrong legal standard was applied to these arguments, which denied the defendant any means of assessing and responding to the evidence against him. Because the majority opinion adopts the same reasoning as the trial court, I respectfully dissent and would reverse the conviction and remand the case for a new trial.

¶28. The majority's characterization of the defendant's objection is misleading. Maj. Op. ¶¶ 7-8. The opinion says that Jenkins claimed a discovery violation, yet the record shows that, while his counsel did initially characterize it that way, this was simply his immediate

14

impression. After V.R. mentioned the diary, Jenkins's attorney immediately objected and requested a bench conference. His first argument was based on a perceived discovery violation, claiming that V.R.'s reference to an entry in her diary was prejudicial because it corroborated her recollection of a particular date. When the prosecuting attorneys replied that they did not have or know about a diary, defense counsel did not accuse the prosecuting attorneys of being dishonest with the court. According to Jenkins's attorney, his objection to a discovery violation was simply an initial impression based on "the way the question was asked." He did not contend that he had been "blasted with something that's not in discovery," but only said "that was my initial concern." Maj. Op. ¶ 8. As discussed below, defense counsel made many arguments before the trial court, and none of his requests for relief was premised on the prosecuting attorneys' prior knowledge.

¶29. In its analysis, the majority cites *Mills v. State*, 813 So. 2d 688, 692 (Miss. 2002), a case involving a State's witness who did not come forward until the trial was underway. Maj. Op. at ¶ 10. The opinion correctly recognizes that Jenkins's case is analogous to *Mills* in that neither party was shown to have known that V.R. may have kept a diary related to her abuse; however, there is no further discussion of the case.

¶30. In fact, the *Mills* opinion supports Jenkins's argument, for this Court held that, when new facts are revealed during trial, a trial court must consider a party's request for *Box*-like remedies, *even* when there is no discovery violation. *Mills*, 813 So. 2d at 692 (citing *Box v. State*, 437 So. 2d 19 (Miss. 1983)). *See also* URCCC 9.04 (adopting the suggested procedures for alleged discovery violations as set forth in Justice Robertson's specially concurring opinion to *Box*, 437 So. 2d at 22-26).

15

¶31. In that case, a woman approached one of the prosecutors during trial and said that Mills had confessed to her that he had committed the crime. *Mills*, 813 So. 2d at 691. The woman came forward with this new information during the State's cross-examination of the defendant and after the State had presented its case in chief. *Id.* When Mills denied having any conversation with the woman about the alleged crime, the prosecutor immediately asked that the jury be excused. *Id.* With the jury out, the prosecutors informed the court and the defense of the new development, and said that they planned to call her as a rebuttal witness for impeachment purposes. *Id.* The trial court granted a recess to allow defense counsel to interview the newly discovered witness. *Id.* When the court reconvened, the defense attorney objected to her testimony, arguing that he had not had time to prepare. *Id.* The attorney did not offer anything other than this generic statement, and he did not request a continuance. *Id.* at 692. The trial court permitted the witness to testify for the State on rebuttal. *Id.* at 691.

¶32. On appeal, Mills argued that the woman's testimony was improperly admitted because she had been present in the courtroom during portions of the trial and could have learned about all of the witnesses' testimony through her family members who had heard all of the State's witnesses. *Id.* at 692. Mills also argued that he was denied the opportunity to develop evidence for surrebuttal. *Id.* (citing *Smith v. State*, 646 So. 2d 538, 543 (Miss. 1994) (discussing the rule that when the State is allowed to present rebuttal evidence, the defense must be given the opportunity to reply by surrebuttal)).

¶33. The Court rejected these arguments by applying the principle announced in *Box* "that the accused has an interest in knowing reasonably well in advance of trial what the

prosecution will try to prove and how it will attempt to make its proof." *Id.* (citing *Box*, 437 So. 2d at 21). The Court summarized the guidelines outlined in Justice Robertson's specially concurring opinion (and as adopted in Rule 9.04 of the Uniform Rules of Circuit and County Court Practice). *Id.* Applying these guidelines, this Court found that the trial court had protected the defendant's interest concerning the new evidence. *Id.* The Court explicitly recognized that the State's lacking prior knowledge was not a bar to relief:

> Unlike *Box*, this is not a case where the prosecution had knowledge that Veronica was a witness before trial began. The trial judge properly determined that there was no discovery violation. The prosecution did not withhold the new evidence and informed Mills and the trial court as soon as the new evidence was discovered. *However, the Box guidelines are still appropriately considered when a trial court is presented with new evidence at trial.*

*Id.* (emphasis added). The Court held that Mills's interests were protected because he was allowed to interview the witness, the trial court did not restrict his cross-examination of the witness, Mills did not request a continuance, and there was nothing in the record (or argument before the trial court) indicating that Mills was prejudiced by the testimony or that he needed more time to develop his defense. *Id.*

¶34.    *Mills*'s reasoning follows the rule that the State has a continuing duty to supplement discovery, and the timing of the prosecution's knowledge is immaterial. "That the prosecution fails to unearth certain evidence until the last minute hardly eviscerates the prejudice to a defendant caught unaware, nor the necessity for reversal where the circuit court denies the defense request for a reasonable continuance." *West v. State*, 553 So. 2d 8, 16-17 (Miss. 1989) (citing *Cole v. State*, 525 So. 2d 365 (Miss.1987); *Stewart v. State*, 512 So. 2d 889, 891-92 (Miss. 1987); *Foster v. State*, 484 So. 2d 1009, 1011 (Miss. 1986)).

17

¶35. The distinction in Jenkins's case is the trial court's determination that the prosecuting attorneys did not learn about the diary until their witness testified at Jenkins's trial. However, I cannot fathom any logical reason why their lack of advance knowledge would affect Jenkins's right to investigate the existence and/or contents of the diary. The legal authority governing the State's duty to disclose is guided by the principle that the accused must have a meaningful opportunity to defend against the charge and that one's right to challenge the State's evidence is inherent to the concept of a fair trial. Applying *Mills* and other supporting authority, the trial court erred in refusing Jenkins the means to investigate V.R.'s claimed written recording concerning the charges for which he was on trial.

¶36. Furthermore, Jenkins's attorney correctly informed the court that the law imputes to prosecuting attorneys the knowledge of other State actors involved in the criminal investigation. Quoting Justice Robertson's concurring *Box* opinion, this Court has held that the "State" is not limited to the individual prosecuting attorneys, but "is a team consisting of the attorney, the law enforcement officers of the jurisdiction in which the case is brought, all other cooperating law enforcement officials—municipal, county, state or federal, the prosecution witnesses, and any other persons cooperating in the investigation and prosecution of the case. What is known or available to any one or more is deemed to be known by or available to the State." *King v. State*, 656 So. 2d 1168, 1174 (Miss. 1995) (quoting *Box*, 437 So. 2d at 25 n.4 (Robertson, J., concurring)). Therefore, the prosecuting attorneys' lack of knowledge is not a bar, if other members of the State's prosecution team had knowledge of a diary. We do not know the answer, for the trial court refused Jenkins any means of discovering the answer.

18

¶37.   *Mills* ultimately found no reversible error because the defendant had not requested a continuance and had not demonstrated that the trial court's attempts to cure any possible prejudice were insufficient.  By contrast, Jenkins's attorney thoroughly and astutely argued his position with support from relevant facts and legal authority.  He pointed out that, without a chance to review the writing, or to discover if it existed, he would not know what relief was appropriate, noting that the possible remedies could range from a mistrial to a simple limiting instruction to the jury that they should disregard the statement.

¶38.   As for possible prejudice, Jenkins gave a convincing argument, despite his being denied the opportunity to discover anything about the victim's claim that she knew the specific date from her diary.  Like many indictments involving sex crimes against minors, the charged crimes were alleged to have occurred between July 1, 2007, and August 5, 2007. Jenkins's attorney argued the obvious: establishing an alibi for a specific date would have been significantly easier than recounting his whereabouts during an entire month.  In fact, the heading to Issue One in Jenkins's brief reads, "the trial court erred when it failed to compel the State to produce the alleged victim's diary after she referred to it for the first time at trial when stating a date certain for one of the alleged offenses and different time span for the incident(s)."  Notably, the record indicates that an alibi defense was contemplated in a report from a court-ordered mental evaluation finding Jenkins competent to stand trial. Concerning his ability to assist in his defense the report states, "[w]hen asked what he needed to do in order to help his lawyer prepare for his case, he replied, 'Tell where I was at.'"

¶39.   The majority opinion also accepts the trial court's finding of no harm because the State did not intend to seek introduction of the diary into evidence.  However, as Jenkins's

19

attorney explained, the diary itself was not the objectionable evidence; instead, it was V.R.'s testimony that she was able to remember a certain date because she had made a written recording.[3] Under the Mississippi Rules of Evidence, and based on the transcript, the State would not have been permitted to admit the diary into evidence. *See* M.R.E. 612 (material used to refresh witness's testimony may be placed into evidence by adverse party). *See also* M.R.E. 803(5) (if admitted, a recorded recollection "may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party"). Rule 612 provides,

> If a witness uses a writing, recording or object to refresh his memory for the purpose of testifying, either (1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing, recording or object produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce into evidence those portions which relate to the testimony of the witness.

Even though the rule refers to the trial judge's discretion, the trial court did not believe production was an option.

¶40.   Finally, I respectfully disagree with the majority's speculating that "without having to risk eliciting damaging testimony regarding the diary's contents, Jenkins still could have questioned V.R. during cross-examination about whether she had ever discussed a diary with the prosecution or an investigator before trial, but chose not to." Maj. Op. n.2. The possibility of eliciting inculpatory evidence cannot be so easily dismissed. Defense counsel would be remiss in cross-examining a child witness about a diary allegedly written when this

---

[3]In closing arguments, the State argued that the abuse had occurred during the time span listed in the jury instructions (and the indictment), referencing V.R.'s testimony that she could remember the abuse occurring on a specific date, July 16.

particular child was as young as five years old, and "[c]ommon sense suggests that [a child's] testimony be viewed with caution," ***House v. State***, 445 So. 2d 815, 827 (Miss. 1984) *superseded on other grounds by* M.R.E 702. He should have been allowed to question the victim about the diary, outside the presence of the jury. This would have given the defense an opportunity to develop valuable information concerning V.K.'s claims that she had made written recordings about her abuse.

¶41. For similar reasons, the defense attorney was justified in suspecting a discovery violation regarding the diary. V.R.'s statement that she had written the date in her diary immediately followed the prosecutor's question, "[w]hy do you remember that day so specifically?" It would not have been unreasonable to assume that the attorney expected a specific answer. The prosecution seemed well-prepared for trial, and the attorneys were intimately familiar with facts of the case. Jenkins's attorney could reasonably assume that the prosecutor would not have asked a question without anticipating the answer. It is a simple precept of good trial practice that trial counsel should never ask a question to which he or she does not know the answer.

¶42. As reflected in the defendant's arguments at trial and on appeal, the issue is not a simple matter of discovery. The error raised on appeal goes to the very heart of what it means to have a fair trial, for this defendant was denied any means to assess testimony which significantly supported the State's case against him. Because the defendant was handicapped in his ability to defend himself, I must respectfully dissent and would reverse the conviction and remand for a new trial.

**KING, J., JOINS THIS OPINION.**

21