# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01080-COA

ANDREW WATSON A/K/A ANDREW D. WATSON            APPELLANT

v.

STATE OF MISSISSIPPI            APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/26/2015 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF BURGLARY AND SENTENCED TO TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED: 12/13/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**FAIR, J., FOR THE COURT:**

¶1. Lisa Netters awoke to find that Andrew Watson, her best friend's son, had broken into her apartment. Watson attempted to sexually assault Netters, but he gave up after he was unable to overcome her resistance. Watson was convicted of burglary, and he claims on appeal that his conviction was against the overwhelming weight of the evidence. We disagree, and so we affirm Watson's conviction and sentence.

## FACTS

¶2.     Netters testified about the burglary and the assault in great detail. She recalled that she had gone out with Watson's mother that night, and she admitted she had consumed several beers earlier in the evening. Around 4:20 a.m., she was awakened by what she believed was a knock on her bedroom window, which was something an old roommate would sometimes do. But when Netters listened for another knock, she instead heard the sound of a screwdriver hitting a table, inside her apartment. Netters got out of bed and saw Watson standing in the doorway of her second bedroom. Netters cursed at Watson as he advanced and grabbed her around the neck with both hands and began choking her. She fought as he pushed her back into her bedroom and fell on top of her on the bed, where he began kissing Netters's neck and trying to open her legs. Netters continued to resist and yelled and threatened Watson until he relented. Watson left after a brief but colorful conversation where he claimed not to have broken into Netters's home. Netters also recalled that she spoke to Watson and his mother sometime later and that Watson had apologized.

¶3.     Netters called the police shortly after the attack, and responding officers testified to discovering her in a distraught condition. They also observed damage to a window, a muddy footprint on the windowsill, signs of a struggle in Netters's home, and abrasions around her neck. Netters immediately identified Watson as the perpetrator and later picked him out of a lineup.

¶4.     Watson testified in his own defense and denied the allegations. Watson's mother also

2

testified for the defense, claiming that she had seen him at home, asleep, a few hours before and after the attack.

## DISCUSSION

¶5. On appeal, Watson claims the verdict was against the overwhelming weight of the evidence. A new trial based on the weight of the evidence should be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005) (citation omitted). "[T]he evidence must be viewed in the light most favorable to the verdict[.]" *Jenkins v. State*, 131 So. 3d 544, 551 (¶23) (Miss. 2013).

¶6. As the motion for a new trial is entrusted to the circuit judge, who had a firsthand view of the trial, "reversal is warranted only if the trial court abused its discretion in denying [the] motion for a new trial." *Waits v. State*, 119 So. 3d 1024, 1028 (¶13) (Miss. 2013).

¶7. Watson's challenge here focuses on Netters's testimony. He points out that Netters admitted she had been drinking the night before, but we note that there was no evidence Netters had consumed any alcohol after approximately 7:30 – more than eight hours before the attack. Watson also points to the lack of physical evidence tying him to the crime, and he notes that he did not bear any injuries from a struggle.

¶8. A review of Netters's testimony makes it clear that she was certain and unequivocal in her identification of Watson as her attacker, and it is undisputed she had known him for years. She described an encounter lasting approximately five minutes and involving

3

significant face-to-face contact and dialogue, followed later by an apology and apparent admission of guilt by Watson. Netters's testimony was not unreasonable or self-contradictory, and Watson's denials and his mother's corroboration of his account constitute only conflicting evidence. "Conflicting testimony does not evince overwhelming evidence; where the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury's duty to resolve the conflict." *Brown v. State*, 995 So. 2d 698, 702 (¶13) (Miss. 2008) (citation and quotation omitted).

¶9.     Watson's conviction is not against the overwhelming weight of the evidence, and so we must affirm.

¶10.    **THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF BURGLARY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**