# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00634-COA

**CLYDE EUGENE WILLIAMS A/K/A CLYDE E. WILLIAMS A/K/A CLYDE WILLIAMS**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/20/2016 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSEPH SCOTT HEMLEBEN |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/22/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE, CARLTON AND GREENLEE, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     In June 2013, Clyde Williams was indicted in Pearl River County, Mississippi, where he was charged with one count of sexual battery and two counts of attempted sexual battery of his stepdaughter, S.M.[1]  Williams proceeded to trial in the Pearl River County Circuit Court in March 2016.  The jury acquitted Williams for one count of attempted sexual battery,

---

[1] Because S.M. was a minor at the time that she became a victim of sexual abuse, initials will be used to protect her anonymity.

but found him guilty of the lesser-included offense of fondling on the remaining two counts.[2]

Williams moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the circuit court denied. Williams was then sentenced to serve fifteen years for each count of fondling, with the sentences to run concurrently, and without eligibility for parole or probation; his sentence was to be served entirely within the custody of the Mississippi Department of Corrections (MDOC). He now appeals. Finding no error, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2.     S.M. is the stepdaughter of Williams, and was twenty years old at the time of trial. S.M. testified that Camelle, S.M.'s mother, and Williams first met when S.M. was approximately thirteen years old. S.M. stated that Camelle and Williams dated for four or five years before marrying. S.M. testified that, initially, her relationship with Williams was positive, and that he was a good stepfather; she detailed many outdoor activities they participated in together. S.M., however, stated that Williams remained "drunk a lot," and that he and Camelle often fought, including over sex.

¶3.     S.M. described the sleeping arrangements in her home. She stated that Williams would sleep with her in her bed almost nightly, while Camelle and S.M.'s stepsister slept in Camelle's room. It was through these sleeping arrangements that S.M. alleged the sexual abuse by Williams began. S.M. stated that she was fourteen years old when Williams first

---

[2] The terms "molestation" and "fondling" are used interchangeably by this Court. In addition, Mississippi Code Annotated section 97-5-23 (Rev. 2006), the statute at issue, has also been called the "gratification of lust" statute and the "unlawful touching" statute. We will use the term "fondling" as that is the term the jury used in its handwritten verdict.

rubbed her breasts and buttocks. S.M. further testified that when she was fifteen, Williams's abuse progressed, wherein he began "putting his hands under [S.M.'s] shirt and in [her] shorts," as well as groping her breasts and rubbing her buttocks and vagina. S.M. also testified that Williams began to digitally penetrate her. At one point, S.M. testified that when she was in her room, Williams undressed her, had her lie on her stomach, and rubbed his penis on her vagina until he ejaculated. S.M. stated that these incidents took place in her bedroom, in Williams's truck, in a tree stand, and at their leased hunting camp.

¶4. S.M. also testified that on July 2, 2012, while camping on land that was part of their hunting lease, Williams sexually abused her.[3] She stated that Williams was drunk and the two began to argue. S.M. went to the tent to lie down, but Williams came in shortly after and was "mad and . . . drunk." S.M. testified that Williams then took her clothes off and penetrated her digitally, and with his penis. She stated that she began crying out of resistance, and that Williams covered her mouth in an attempt to muffle her cries so that others nearby would not hear her. S.M. said Williams then got dressed, covered her up, and left the tent.

¶5. Additionally, S.M. gave testimony regarding an incident that took place in her bedroom on July 28, 2012. S.M. stated that she returned home and found Williams and his friend, Otis Fairley, in the yard. She testified that Williams was highly intoxicated. When S.M. began to walk toward the house, she stated that Williams commented to Fairley that he was going to "tap that tonight," alluding to intercourse with S.M.; Fairley testified that he

---

[3] Williams was ultimately acquitted of the attempted-sexual-battery charge related to the July 2, 2012 incident.

never heard the comment. According to S.M., Williams came in her room later that evening and attempted to place a plastic bag over her head; she ripped the bag, and eventually, Camelle came in the room and told Williams to leave S.M. alone. Even later that night, Williams allegedly returned to S.M.'s bedroom and tried to "mess with" her. S.M. ultimately stated that Williams digitally penetrated her vagina, and attempted to penetrate her with his penis. S.M., however, testified that she began to scream, that she told Williams to leave her alone, and that Williams promptly went to sleep afterwards.[4]

¶6.     The following morning, July 29, 2012, S.M. conveyed to Camelle the allegations of Williams's abuse. Camelle was initially very angry, and questioned Williams regarding the alleged abuse; Williams denied any wrongdoing. S.M. then went to stay at her grandfather Herber Ladner's home, where she has resided in large part ever since. Upon informing Ladner of the abuse, he alerted the authorities.[5]

¶7.     Williams was arrested following the allegations. He was indicted by a grand jury on one count of sexual battery and two counts of attempted sexual battery. Williams proceeded to trial, where he was ultimately convicted of two counts of the lesser-included offense of fondling. Following trial, Williams filed a motion for a JNOV or, in the alternative, a new trial. The circuit court denied Williams's motion, and sentenced him to a total term of fifteen years in the custody of MDOC. He timely appealed.

## DISCUSSION

[4] Williams was ultimately convicted of two counts of fondling, a lesser-included offense of sexual battery, related to these July 28, 2012 incidents.

[5] Both Ladner and Camelle testified that they contacted the authorities.

4

¶8.    On appeal, Williams assigns as error the following: (1) fondling is not a lesser-included offense of sexual battery; (2) the circuit court erred in denying his motion for a mistrial; (3) the State committed prosecutorial misconduct; (4) the circuit court improperly limited his cross-examination of S.M.; and (5) certain expert testimony violated his constitutional right to confront witnesses against him. We disagree. Therefore, we affirm.

## I.    Fondling as a Lesser-Included Offense of Sexual Battery

¶9.    Williams asserts that the circuit court erred in granting the lesser-included instruction on fondling, as he argues that it is not a lesser-included offense of sexual battery. "Jury instructions are reviewed under an abuse-of-discretion standard." *Burgess v. State*, 178 So. 3d 1266, 1272 (¶14) (Miss. 2015). "A lesser-included-offense instruction may be given where there is some evidence supporting the lesser-included offense." *Jenkins v. State*, 131 So. 3d 544, 550 (¶18) (Miss. 2013).

¶10.    Williams was indicted for sexual battery under Mississippi Code Annotated section 97-3-95(2) (Rev. 2006), which states:

> A person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child's . . . *stepparent*[.]

(Emphasis added).[6] "Sexual penetration" is defined by statute to include "any penetration of the genital or anal openings of another person's body by any part of a person's body[.]"

---

[6] Williams was also indicted for attempted sexual battery under Mississippi Code Annotated sections 97-1-7(1) (Rev. 2006) and 97-3-95(2), which require "(1) the intent to commit sexual battery, (2) an overt act toward committing sexual battery, and (3) failure to commit sexual battery." *Moore v. State*, 112 So. 3d 1084, 1087 (¶8) (Miss. Ct. App. 2013).

Miss. Code Ann. § 97-3-97(a) (Rev. 2006). Fondling, on the other hand, is defined under

section 97-5-23(2) as follows:

> Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child younger than himself or herself and under the age of eighteen (18) years who is not such person's spouse, with or without the child's consent, when the person occupies a position of trust or authority over the child shall be guilty . . . . A person in a position of trust or authority over a child includes . . . a child's . . . *stepparent*[.]

(Emphasis added).

¶11. In *Friley v. State*, 879 So. 2d 1031 (Miss. 2004), the Mississippi Supreme Court was tasked with determining whether fondling was a lesser-included offense of sexual battery. There, Friley was indicted for sexual battery, but ultimately convicted of fondling. *Id.* at 1032 (¶1). Friley cornered the victim, touched her genital area, and then began touching himself. *Id.* at (¶2). The court held that, under the particular facts of that case, fondling was a lesser-included offense of sexual battery. *Id.* at 1035 (¶17). In reaching its conclusion, the supreme court analyzed when one offense may be considered a lesser-included offense of another, employing the test from *Sanders v. State*, 479 So. 2d 1097, 1108 (Miss. 1985), which states:

> Whether applied for the benefit of the [S]tate or defense, in order to authorize such instruction the more serious offense must include all the elements of the lesser offense, that is, it is impossible to commit the greater offense without at the same time committing the lesser-included offense. Also, there must be some evidence to support the lesser-included offense.

*Friley*, 879 So. 2d at 1034 (¶13).

¶12. Utilizing this test, the *Friley* court then highlighted the elements that each offense

6

shared, noting, however, that fondling required the added intent element of "for the purpose of gratifying his . . . lust, or indulging his . . . depraved licentious sexual desires[.]" *Id.* at 1034-35 (¶14). Going further, the court stated that "a plain reading of the statutes shows that sexual battery (penetration) includes [fondling] (touching). It is impossible to penetrate without touching." *Id.* at 1035 (¶15). Most importantly, however, the court found that Friley's specific intent to gratify his lust—though not an element of sexual battery—was the only reasonable inference that could be drawn from his actions. *Id.* at (¶16). In a case of first impression, the *Friley* court made clear that "intent can be inferred from a defendant's actions," and that "[fondling] may be a lesser-included offense to some types of sexual battery." *Id.* at 1034-35 (¶¶12, 16-17) (citing *Moody v. State*, 841 So. 2d 1067, 1092-93 (Miss. 2003)).

¶13. Then, in *Jenkins*, a case decided less than four years ago, our supreme court reaffirmed the principles set forth in *Friley*. *Jenkins*, 131 So. 3d at 550 (¶¶18-19). There, the *Jenkins* court again held that "fondling . . . is a lesser-included offense of sexual battery," and that specific, lustful intent can be inferred "from the circumstances of the situation." *Id.* (citing *Friley*, 879 So. 2d at 1035 (¶17)). More recently, however, this Court found likewise in *Ringer v. State*, 203 So. 3d 794, 798-99 (¶¶16-17) (Miss. Ct. App. 2016). *Ringer* required us to determine whether there was sufficient evidence to uphold the defendant's sexual-battery charge. *Ringer*, 203 So. 3d at 795-96 (¶2). Finding there was not, we reversed Ringer's conviction of sexual battery, and rendered a conviction on the lesser-included offense of fondling. *Id.* at 799 (¶18).

¶14. Thus, as this Court recently held in *Ringer*, we so find today—that "[fondling] can be a lesser-included offense of sexual battery when the penetration is alleged to have been done with a body part of the defendant and where a lustful purpose can be inferred from the circumstances of the touching." *Id.* at 798 (¶16) (citing *Friley*, 879 So. 2d at 1034-35 (¶¶13-17)). The record reveals ample evidence supporting the lesser-included offense of fondling, which allowed the jury in this case to reasonably infer Williams's actions were for the purpose of gratifying his lust or his depraved, licentious sexual desires. Thus, in light of the law as it exists today, and the evidence presented at trial, we find that the circuit court did not err in granting the lesser-included fondling instruction. This issue is without merit.

## II. Denial of Motion for Mistrial

¶15. Williams next alleges that the circuit court erred in denying his motion for a mistrial after the State asked an improper question of Camelle during cross-examination. "Whether to grant a motion for a mistrial is within the sound discretion of the trial court. The standard of review for denial of a motion for mistrial is abuse of discretion." *Ford v. State*, 205 So. 3d 1172, 1179 (¶29) (Miss. Ct. App. 2016). "The trial court must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case." *Rayner v. State*, 186 So. 3d 881, 893 (¶49) (Miss. Ct. App. 2015).

¶16. During the State's cross-examination of Camelle, the State asked Camelle whether it was true that Williams had previously been accused of improperly touching another child. Camelle stated that it was untrue, and that it had never happened. Following this question and answer, Williams objected and moved for a mistrial, which the circuit court ultimately

denied. Beforehand, however, the circuit-court judge conducted a bench conference with the parties to discuss the subject of the motion. The State contended that Williams had "opened the door" after Camelle and Cindy Tanguis—the mother of the child that was the subject of the State's inappropriate question—had stated that they trusted Williams and had never heard of any similar prior incidents. Nonetheless, the question was found to be inappropriate.

¶17. As a result, the circuit court issued a limiting instruction to the jury, stating the following:

> The previous question asked by the District Attorney to the witness regarding allegations of any unknown party to this action have absolutely no basis in evidence.
>
> It was an inappropriate question. The witness will not be forced to or asked to answer or be allowed to answer the question. And you should not speculate as to what the answer should be.
>
> I'll leave it at that, but it is not—I'm going to instruct you to totally disregard whether there's any merit to it or whether it was an inappropriate question by the District Attorney.
>
> We're just going to forget it and move on.

Where a limiting instruction is given, "[i]t is presumed, unless otherwise shown, that the jury followed the instruction given by the trial court." *Ford v. State*, 147 So. 3d 325, 330 (¶12) (Miss. 2014). Other than mere conclusory statements alleging prejudicial error, Williams has not shown that the jury disregarded the instruction. Thus, we find the circuit court did not abuse its discretion in denying Williams's motion for a mistrial. This issue is without merit.

### III. Prosecutorial Misconduct

¶18. Building on his immediately preceding argument, Williams asserts that the State's line

9

of questioning discussed above was highly inflammatory, thus constituting prosecutorial misconduct, and denied him his right to a fair trial. We disagree.

¶19. In cases where we are called upon to evaluate prosecutorial statements because of their alleged impropriety, we must first discern "whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." *Franklin v. State*, 136 So. 3d 1021, 1030 (¶31) (Miss. 2014) (quoting *Dancer v. State*, 721 So. 2d 583, 589 (¶31) (Miss. 1998)). "Any supposed improper statements must be considered within context while also taking into account the facts surrounding the particular case." *Id.*

¶20. Williams argues that the State knew, or should have known, that its question posed to Camelle was improper, and that the primary purpose of the inquiry was to inflame the jury. Williams admits, though, that "attorneys are allowed a wide latitude in arguing their cases to the jury. However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." *Id.* at 1031 (¶33). As such, a "jury's decision must be based on the evidence[;] thus any verdict based on 'bias, passion, or prejudice' will be overturned." *Id.* (quoting *Sheppard v. State*, 777 So. 2d 659, 662 (¶10) (Miss. 2000)).

¶21. As discussed above, the State asked Camelle during cross-examination whether Williams had been accused of improperly touching another child. Again, in the bench conference following Williams's objection, the State argued that the door had been opened after both Camelle and Cindy Tanguis had testified that Williams was a trustworthy

10

individual. Despite the State's argument, the circuit court deemed it to be an inappropriate question, and issued a limiting instruction. Williams has failed to show that the jury did not adhere to the court's instruction. *See Ford*, 147 So. 3d at 330 (¶12). Williams later moved for a directed verdict, which the circuit court denied.

¶22. Following that ruling, the State wished to make clear on the record its purpose for asking the question, and stated:

> Regarding the attempted elicited testimony about [the other child's] situation, the State received information from [another witness] and we intended to ask [that witness] about her knowledge of that incident on rebuttal, but I decided not to do so in light of the [c]ourt's ruling.
>
> We were attempting to introduce that evidence to impeach both Camelle Williams and Cindy Tanguis as saying that nothing like that had ever happened with Clyde, that he was completely trustworthy.

The court then responded, "Well, I was unaware of that. I knew that there had to be a reason you asked the question and that's why I didn't make a big issue out of it." Therefore, viewing both the State's articulated purpose (witness impeachment), and its deference to the court's ruling, in light of the context and surrounding facts of the case, we cannot say that the "natural and probable effect of the improper [comment] . . . was to create an unjust prejudice" against Williams, thus resulting in a decision influenced by the alleged prejudiced so created. *Franklin*, 136 So. 3d at 1030 (¶31). This issue is without merit.

### IV. Limited Cross-Examination of S.M.

¶23. Next, Williams asserts that the circuit court improperly limited his cross-examination of S.M. This Court "review[s] a trial court's decision to limit cross-examination for abuse of discretion." *Collier v. State*, 183 So. 3d 885, 889-90 (¶18) (Miss. 2016). Thus, "an abuse

of discretion will be found only where the defendant shows clear prejudice from undue restraint on the defense." *Id.* at 890 (¶18).

¶24. Williams argues that he was directly prevented from attacking S.M.'s credibility, which he asserts was paramount to his case, after the following exchange occurred between S.M. and Williams's counsel, Glenn White:

> White: Did you want to marry [Williams]?
>
> S.M.: No. I don't want to marry an old man. I want someone my age.
>
> White: Really? But you have a boyfriend that's about 51 years old.
>
> S.M.: I do not have a boyfriend that's about 51 years old.

At this point in the cross-examination, the State objected under Mississippi Rule of Evidence 412, commonly referred to as the "rape shield" rule. Prior to trial, however, Williams had filed a motion pursuant to Rule 412 seeking to introduce evidence of S.M.'s past sexual behavior. After a hearing on the matter, the court denied the motion, excluding any reference to S.M.'s sexual history under Rule 412.

¶25. Rule 412's purpose is "to prevent the introduction of irrelevant evidence of the victim's past sexual behavior to confuse and inflame the jury into trying the victim rather than the defendant." *Burgess*, 178 So. 3d at 1277 (¶32). "Pursuant to Rule 412(a), 'reputation or opinion evidence of [a victim's] past sexual behavior' is inadmissible in criminal cases involving sexual offenses." *Id.* Rule 412 states, in pertinent part:

> (a) Prohibited Uses. The following is not admissible in a criminal case involving an alleged sexual offense:
>
> > (1) reputation or opinion evidence of a victim's past sexual

12

behavior; and

(2) evidence of a victim's past sexual behavior other than reputation or opinion, except under subdivisions (b) and (c).

(b) Exceptions. The court may admit evidence of:

(1) specific instances of a victim's past sexual behavior:

(A) with a person other than the defendant, if offered by the defendant to prove that someone else was the source of semen, pregnancy, disease, or injury;

(B) with the defendant, if offered by the defendant to prove consent; and

(C) if constitutionally required to be admitted; and

(2) false allegations of sexual offenses made at any time before trial by the victim.

As none of these exceptions applied to the questions asked by Williams, we cannot say that the circuit abused its discretion in sustaining the State's objection under Rule 412.

¶26. In addition, however, the record appears to reflect that the State's objection was sustained because Williams's question failed to open the door regarding S.M.'s alleged fifty-one-year-old boyfriend. The following exchange occurred between the court and Williams's counsel:

Court: Now, there's an objection . . . to the question that was asked about whether or not the witness has a 51-year-old boyfriend. The basis for the objection has been stated. Would you begin again with your response?

White: Her answer . . . was that she doesn't want an older boyfriend. And the fact—

13

| | |
|---|---|
| Court: | An older husband? |
| White: | Or boyfriend? |
| Court: | So the objection is sustained. |
| White: | Yes, Your Honor. |
| Court: | The question is not about who she has dated or has not dated. She made a statement about who she wanted to marry later in life. Go ahead. |

From this exchange, the State argues the circuit court sustained the objection because White had not laid the foundation for his question. We agree. Thus, we find no abuse of discretion by the circuit court in limiting Williams's cross-examination of S.M. in this regard. This issue is without merit.

### V.    Expert Witness

¶27.    Under this issue, Williams asserts that the circuit court refused to allow him to call an expert witness on his behalf, thus depriving him of his fundamental right to a fair trial.

¶28.    "The admission of expert testimony is within the discretion of the trial court." *Galloway v. State*, 122 So. 3d 614, 632 (¶27) (Miss. 2013). "In Mississippi, expert testimony is admissible if it is 'relevant and reliable.'" *Id.* (quoting *Ross v. State*, 954 So. 2d 968, 996 (¶57) (Miss. 2007)). "Expert testimony is relevant if it will 'assist the trier of fact in understanding or determining a fact at issue.'" *Id.* "Expert testimony is reliable if it is 'based on methods and procedures of science,' not 'unsupported speculation.'" *Id.* "Unless th[e] Court concludes that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, that decision will stand." *Id.*

¶29.     Because the circuit court did not conduct a voir dire examination of Williams's expert, Dr. Steven Hayne, Williams argues that the circuit court improperly excluded Dr. Hayne from testifying.  As the State highlights on appeal, however, the circuit court partially denied Dr. Hayne's expert testimony on procedural grounds—specifically Uniform Rule of Circuit and County Court Practice 4.04.[7]  Rule 4.04(A) states: "Absent special circumstances the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least *sixty days before trial*."  URCCC 4.04(A) (emphasis added).

¶30.     Here, the record reflects that trial was set for March 29, 2016.  The State was not made aware that Williams intended to call Dr. Hayne to testify until March 22, 2016—seven days before trial.  On March 24, 2016, the State moved to exclude Dr. Hayne's testimony pursuant to Rule 4.04(A).  In Williams's response, he argued that Rule 4.04 was inapplicable, and that Dr. Hayne should not have been excluded from testifying.  Though we agree that Rule 4.04 was inapplicable as to whether Dr. Hayne was permitted to testify, we do not find that the circuit court abused its discretion in its ultimate exclusion of Dr. Hayne's testimony.  *See* URCCC 4.01 (providing Rule 4.04 applies "only in civil proceedings.").

¶31.     A March 29, 2016 hearing was held, where the State argued that trial had previously been set and continued twice, and that Rule 4.04(A) barred Dr. Hayne from testifying, absent

[7] We note that the Uniform Rules of Circuit and County Court relating to criminal practice have been supplanted by the Mississippi Rules of Criminal Procedure, effective July 1, 2017.  But because the former rules were still in effect during Williams's trial, Rule 4.04 applies to Williams's case.  The same applies to any other of the former rules cited in this opinion.

special circumstances. In addition, the State noted that Dr. Hayne's curriculum vitae had not been provided, and that even without obtaining Dr. Hayne's credentials, he was not qualified to testify on the topic of DNA analysis. The State also reiterated that in an agreed scheduling order, all experts were to be designated no later than September 8, 2015.

¶32. In its ruling, the circuit court cast much doubt on Dr. Hayne's qualifications in the field of DNA analysis—in the end, it held that, because Williams had failed to timely designate his expert under both Rule 4.04(A) and the agreed scheduling order, and had offered no proof as to Dr. Hayne's qualifications, Dr. Hayne would not be allowed to testify. To be clear, the circuit court stated:

> [T]o preserve the record, the [c]ourt will say that not only was there no curriculum vitae or expert's report submitted of Dr. Hayne, there was also never any [notice], until very recently after the scheduling order deadlines, and Rule 4.04's requirements of no special circumstances exist that would allow the relaxation of the rule.

Because we find Rule 4.04 inapplicable to criminal proceedings, however—and in light of Williams's failure to timely designate Dr. Hayne—we conclude that the proper course of action by the circuit court should have been to follow the procedures set forth in Rule 9.04(I), which pertain to discovery violations. *See* URCCC 9.04(I) (adopting guidelines articulated in *Box v. State*, 437 So. 2d 19, 23-25 (Miss. 1983) (Robertson, J., specially concurring)). We find such proper in light of recent decisions made by both the supreme court and this Court.[8]

¶33. Nonetheless, we hold the circuit court's failure to do so inconsequential, as the lack

---

[8] *Compare Overton v. State*, 195 So. 3d 715 (Miss. 2016) (finding abuse of discretion to exclude defense witnesses disclosed day before trial), *with Pelletier v. State*, 207 So. 3d 1263 (Miss. Ct. App. 2017), *cert. granted and dismissed* (court evenly divided as to whether court abused its discretion by excluding defense witness disclosed after State had rested).

of proof regarding Dr. Hayne's qualification as to DNA analysis was the primary reason his testimony was excluded. Upon the State's challenge to Dr. Hayne's qualifications, Williams bore the burden of establishing that Dr. Hayne was qualified to testify as to DNA. *See Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 592 n.10 (1993) (holding, under Federal Rule of Evidence 104(a), proponent of expert testimony must establish witness's qualifications by preponderance of proof); *see also* M.R.E. 702 (Rev. 2016) (requiring "witness [be] qualified as an expert by knowledge, skill, experience, training, or education").

¶34. Thus, pursuant to Williams's failure to comply with the agreed scheduling order, as well as Williams's failure to show how Dr. Hayne was qualified to testify about DNA—a burden that he ultimately bore—we do not find that the circuit court's decision to exclude Dr. Hayne's expert testimony was an abuse of discretion. This issue is without merit.

### VI. Confrontation Clause

¶35. Lastly, Williams argues that his constitutional right to confront witnesses against him was violated because Leslia Davis, the State's DNA expert, testified about a serology report performed by Amy Malone, who did not testify at trial.

¶36. "Under both the United States Constitution and the Mississippi Constitution, an accused has a right to confront and cross-examine the witnesses against him." *Hingle v. State*, 153 So. 3d 659, 662 (¶7) (Miss. 2014); U.S. Const. amend VI; Miss. Const. art. 3 § 26. "In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court held that the Confrontation Clause bars the admission of testimonial hearsay unless the witness is unavailable and the defendant had a prior opportunity for cross-examination." *Hingle*, 153

So. 3d at 662 (¶7) (citing *Crawford*, 541 U.S. at 68). "Generally, testimony is a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* (internal quotation ommitted). "Laboratory reports created to serve as evidence against the accused at trial are testimonial statements covered by the Confrontation Clause." *Id.*; *see also Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009); *Bullcoming v. New Mexico*, 564 U.S. 647, 664 (2011).

¶37. In light of the principles set forth in *Melendez-Diaz* and *Bullcoming*, our supreme court has held "that a defendant's right of confrontation is satisfied by the testimony of an analyst who reviewed the report for accuracy and signed it as a technical reviewer." *Hingle*, 153 So. 3d at 662-63 (¶9) (citing *Grim v. State*, 102 So. 3d 1073, 1081 (¶22) (Miss. 2012)). As such, "a supervisor, reviewer, or other analyst involved may testify in place of the primary analyst where that person was 'actively involved in the production of the report and had intimate knowledge of analyses even though [he or] she did not perform the tests firsthand.'" *Grim*, 102 So. 3d at 1081 (¶22) (citing *McGowen v. State*, 859 So. 2d 320, 340 (¶68) (Miss. 2003)).

¶38. Here, Williams's case falls squarely within the purview of *Grim*, *Jenkins*, and *Hingle*, wherein a reviewer or other analyst—namely, Leslia Davis—testified about the results of a serological analysis performed by the primary analyst, Amy Malone, who did not testify at trial. At trial, Davis testified that Malone was the primary analyst for the serology report, but that Davis reviewed her work to ensure that proper methods and controls were used in accordance with Mississippi Crime Laboratory operating procedure. The State introduced

18

the serology report into evidence, which verified that Malone performed the primary analysis, and that Davis was the "technical reviewer" of Malone's report. Following the serological analysis, Davis stated that she performed a DNA analysis, whose report was also introduced into evidence. Thus, while the serology report was performed by Malone, Davis had intimate knowledge of both the analysis and the production of the report through the role as the report's technical reviewer. And so, Davis's testimony regarding the serological analysis did not violate Williams's constitutional right of confrontation. *See Hingle*, 153 So. 3d at 662-63 (¶9) (citing *Grim*, 102 So. 3d at1081 (¶22)).

¶39.   Lastly, we find it appropriate to address an argument raised by Williams regarding the holding in *Bullcoming*: that "[t]he Supreme Court has . . . rejected the use of surrogates in testifying about forensic reports." To be clear, this is an inaccurate articulation of the *Bullcoming* Court's holding. There, the Court stated:

> The question presented is whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification.
>
> . . . .
>
> We granted certiorari to address this question: Does the Confrontation Clause permit the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification.

*Bullcoming*, 564 U.S. at 652, 658. "Neither formulation limits the question presented to whether the *only* scientist or analyst who can testify is the scientist or analyst who performed

the underlying analyses." *Grim v. Fisher*, 816 F.3d 296, 307 (5th Cir. 2016).

¶40.    As the United States Court of Appeals for the Fifth Circuit held in *Grim*:

> [A]t most, the holding of *Bullcoming* clearly establishes that, when one scientist or analyst performs a test reported in a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—and the prosecution introduces the report and certification to prove that particular fact, the Confrontation Clause forbids the prosecution from proving that particular fact through the in-court testimony of a scientist or analyst who neither signed the certification nor performed or observed the test reported in the certification. *Bullcoming* does not clearly establish what degree of involvement with the forensic testing, beyond what was present in *Bullcoming*, is required of a testifying witness. In other words, at most, *Bullcoming* holds that if scientist A performed the test, the prosecution cannot prove a particular fact contained in scientist A's testimonial certification by offering the in-court testimony of scientist B, if scientist B neither signed the certification nor performed or observed the test. *But Bullcoming does not hold that scientist B cannot testify even if he has a sufficient degree of involvement with the forensic testing*.

*Grim*, 816 F.3d 307 (emphasis added). Therefore, we find that Davis, as a technical reviewer, was "actively involved in the production of the report and had intimate knowledge of [the] analys[is] even though . . . she did not perform the [serology] tests firsthand." *Grim*, 102 So. 3d at 1081 (¶22). As such, the circuit court did not abuse its discretion by allowing Davis to testify. Williams had the opportunity to confront and cross-examine Davis at trial, which satisfied his Sixth Amendment right to confront the witness against him. This issue is without merit.

## CONCLUSION

¶41.    In sum, we find no reversible error on the part of the circuit court. Therefore, we affirm.

¶42.    **AFFIRMED.**

20

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**