# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01732-COA

**LORENZO QUENTIN SHEAD JR. A/K/A**  **APPELLANT**
**LORENZO SHEAD JR.**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

DATE OF JUDGMENT:                    04/05/2018
TRIAL JUDGE:                         HON. CAROL L. WHITE-RICHARD
COURT FROM WHICH APPEALED:           WASHINGTON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              OFFICE OF STATE PUBLIC DEFENDER
                                     BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL
                                     BY: MATTHEW WYATT WALTON
DISTRICT ATTORNEY:                   WILLIE DEWAYNE RICHARDSON
NATURE OF THE CASE:                  CRIMINAL - FELONY
DISPOSITION:                         AFFIRMED - 03/03/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., GREENLEE AND TINDELL, JJ.**

**TINDELL, J., FOR THE COURT:**

¶1.    A Washington County grand jury indicted Lorenzo Shead Jr. for one count of sexual battery against eight-year-old Roshanda.[1]  After the State presented its case-in-chief at trial, the Washington County Circuit Court granted the defense's motion for a directed verdict on the sexual-battery charge.  At the close of trial, the circuit court instructed the jury on fondling as a lesser-included offense of sexual battery.  Following its deliberations, the jury convicted Shead of fondling, and the circuit court sentenced Shead to ten years in the custody

---

[1] We use a fictitious name to protect the identity of the minor victim in this case.

of the Mississippi Department of Corrections (MDOC), with five years to serve, five years suspended, and five years of supervised probation. The circuit court further ordered that Shead pay $2,100 in various fees and fines and that his sentence for fondling run concurrently with his sentence in a separate case docketed as cause number 2016-0135.

¶2. On appeal, Shead argues that (1) the circuit court erred by limiting the testimony of one of his defense witnesses; (2) the circuit court erred by giving the jury the lesser-included-offense instruction on fondling; (3) the evidence was insufficient to support the jury's verdict; and (4) the verdict was against the overwhelming weight of the evidence. Finding no error, we affirm Shead's conviction and sentence.

**FACTS**

¶3. At trial, K.W.[2] testified she was visiting her grandmother's house in December 2014 when her cousin Roshanda stated, "My brother touched me." Roshanda had two older brothers: Shead (referred to as either Lorenzo or L.J.) was the elder of the two brothers, and Jeremiah was the younger of the two brothers. K.W. testified that Roshanda did not clarify which brother had touched her. K.W. informed her father, Eugene Williams, about Roshanda's comment, and Williams took K.W. to the Greenville Police Department to speak to police officers and to make a statement.

¶4. Investigator Tammie Hudson with the Greenville Police Department stated that the Greenville police chief called her and asked that she come into the police station to meet with K.W. and Williams in reference to a molestation allegation. After speaking to K.W. and

---

[2] We use initials in place of the minor witness's name.

2

Williams at the police station, Investigator Hudson contacted Sergeant Laquanna Wesley. Investigator Hudson and Sergeant Wesley drove to the Sheads' home and spoke to Roshanda's mother. The officers explained they had received allegations that Roshanda was a victim of sexual abuse. Roshanda's mother gave the officers permission to speak to Roshanda. Both officers testified that Roshanda disclosed two incidents of abuse to them. According to Investigator Hudson's testimony, Roshanda stated that on Monday, December 22, 2014, her brother "L.J." had "tried to put his penis in her . . . behind" and that the next day, on Tuesday, December 23, 2014, "L.J." had "tried to touch her private area and . . . tried to get her to touch his private . . . area." With regard to the December 22, 2014 incident, Sergeant Wesley similarly testified that Roshanda told the officers that "Lorenzo Shead had put his private into her behind."

¶5.     Investigator Hudson testified that Roshanda stated she had told her mother about the incidents but that she did not feel her mother believed her. In addition, Roshanda told the officers that she told her cousin K.W. Roshanda then told the officers that she did not want L.J. to touch her anymore. Sergeant Wesley testified that at the time of the alleged incidents, Roshanda was eight years old, and Shead was nineteen years old. After hearing Roshanda's statement, Sergeant Wesley contacted the Mississippi Department of Child Protection Services (CPS). Estella Johnson, a CPS family-protection specialist, and her supervisor Earnestine Perryman responded to Sergeant Wesley's call. Upon the CPS employees' arrival, Investigator Hudson joined Sergeant Wesley outside the car, where they remained while the CPS workers spoke to Roshanda.

3

¶6.    Sergeant Wesley observed Roshanda's subsequent forensic interview. Sergeant Wesley testified that Roshanda made the same disclosure during the forensic interview that she had previously made to the officers. According to Sergeant Wesley, Roshanda "disclosed that her brother put his private into her behind." Roshanda also underwent a medical examination, and Sergeant Wesley received and reviewed the results. After reviewing the results of Roshanda's medical examination, Sergeant Wesley prepared an affidavit and warrant for Shead's arrest for sexual battery. After being arrested and processed, Shead was tested for sexually transmitted diseases (STDs).

¶7.    Johnson testified that in December 2014 CPS received a phone call requesting a worker's presence at a certain address due to allegations of abuse and neglect. Johnson and Perryman arrived at the specified address and saw Sergeant Wesley standing outside a house and speaking on her cell phone. Johnson testified that Investigator Hudson was sitting in a car with Roshanda. Johnson and Perryman spoke to Roshanda's mother, who was inside the house, and informed Roshanda's mother about the allegations. After Roshanda's mother gave permission for them to speak with Roshanda, Johnson testified that she and Perryman returned to the car and spoke with Roshanda. Johnson corroborated that the officers waited outside while she and Perryman spoke to Roshanda. Johnson testified that when she and Perryman asked whether Roshanda knew why they were there, Roshanda answered affirmatively. Without giving any details about the allegation they had received, the CPS workers asked Roshanda to tell them "about the incident that [had] happened with her brother." Johnson testified as follows regarding Roshanda's statement:

4

[Roshanda] stated that she was asleep in her mother's bedroom. Her brother L.J. came into the room. He got in the bed with her. She sa[id] he tried to unbutton her pants and stick his penis in her behind. She sa[id] she woke up, and he ran -- he grabbed a pillow, put it in front of his private area, and ran out the door.

¶8. Perryman, as an area CPS supervisor for Washington and Sunflower Counties, testified that she accompanied Johnson in December 2014 to the Sheads' home after CPS received an allegation of abuse. Like Johnson, Perryman testified that she observed Sergeant Wesley outside the house when she and Johnson arrived. Perryman likewise testified that she and Johnson entered the Sheads' residence, obtained permission from Roshanda's mother to speak to Roshanda, and then went back outside to speak with Roshanda. With regard to the conversation she and Johnson had with Roshanda, Perryman testified, "And we asked her [(Roshanda)] did she know why we [were] there, and she said[, 'Y]es.['] And we asked her to tell us what happened, and she alleged that her brother tried to put his penis in her behind." Perryman stated that Roshanda then clarified that she was speaking about her brother L.J. Perryman further testified that in accordance with her professional training, she only asked "open-end[ed] questions when a sexual abuse or either a real bad physical abuse ha[s] occurred on a child due to [a] forensic medical [examination] and [an] interview ha[ving] to be done." Perryman stated that CPS scheduled a forensic interview for Roshanda and that she observed that interview.

¶9. Roshanda also testified at Shead's trial. Roshanda stated that during December 2014 she told K.W. that L.J. had touched her. Roshanda testified that when the incident happened, her mother had taken her father to work and that she was sleeping alone in her parents'

5

bedroom. Roshanda stated that she awoke because she heard the "handles on the drawers rattling." She turned to her side and saw her brother L.J. in the room. Roshanda stated that L.J. came over to the bed and that "[h]is private part was -- was on my behind." Roshanda then testified that "[h]e grabbed the pillow to hide his private part. He walked out [of] the room. I went back to sleep. I woke back up, went to use the restroom." Roshanda testified that she could not remember whether she felt her brother's private part on her skin or on her clothes.

¶10. Rachel Daniels, the director of program services for the Children's Advocacy Centers of Mississippi, conducted Roshanda's forensic interview on February 9, 2015. Daniels testified that she had previously worked as the social worker and forensic interviewer at the Mississippi Children's Safe Center (CSC) and had conducted forensic interviews with children who were suspected abuse victims. The circuit court accepted Daniels as an expert in forensic interviewing. After interviewing Roshanda, Daniels wrote a report that contained her findings and conclusions. Based on Roshanda's statements and demeanor during the interview, Daniels concluded that Roshanda's "statements were consistent [with] other children who have made statements regarding abuse . . . ." The circuit court allowed the State to enter into evidence a redacted copy of the forensic interview. Daniels testified that during the forensic interview, Roshanda described being asleep in her parents' bedroom when a noise awoke her. Roshanda told Daniels that around the time of a holiday when she was eight years old, her brother L.J., "put his private part near her butthole." According to Daniels, Roshanda "described that when she was [awoken] that her pants were unbuttoned

6

and that her brother was naked, and she reported that he left the room, that he covered himself with a pillow."

¶11. Wendi Nopper, a family nurse practitioner at CSC, testified that in the course of her employment, she routinely assessed, diagnosed, and treated children who were suspected of having suffered neglect, sexual abuse, and physical abuse. For an alleged sexual-abuse case, Nopper explained that CSC personnel conducted a full head-to-toe examination of the child and then tested the child's urine for any STDs. Depending on the information received, CSC personnel might also swab the child's mouth and bottom and obtain blood work to test for HIV and syphilis. If a test result came back positive for any STDs, Nopper stated that CSC contacted law enforcement and the Department of Human Services (DHS) with the information.

¶12. After observing Roshanda's forensic interview on February 9, 2015, Nopper performed a full head-to-toe forensic medical examination on Roshanda. Nopper testified that based on Roshanda's history and the circumstances of the referral, she took samples of Roshanda's urine to test for gonorrhea and chlamydia and did blood work to test for HIV and syphilis. Nopper received Roshanda's test results back two days later on February 11, 2015. Nopper testified that Roshanda's urine sample tested positive for chlamydia. Nopper explained that "chlamydia is definitive, which . . . means it has to be obtained from direct contact with infected body secretions, and so she [(Roshanda)] had to have . . . [come in] intimate contact with someone [who] actually had that same infection, a chlamydia infection." The same day that she reviewed Roshanda's medical-examination results, Nopper

7

contacted DHS and law enforcement.

¶13.    As a result of the sexual-assault allegation, Dr. James Wright evaluated Shead in February 2015.  Dr. Wright testified that a urinalysis and a "DNA chlamydia probe" were performed on Shead.  Dr. Wright confirmed that Shead tested positive for chlamydia.

¶14.    After the State rested its case-in-chief, the defense moved for a directed verdict on the sexual-battery charge.  The circuit court concluded that insufficient evidence existed for a reasonable juror to find beyond a reasonable doubt that the State had proved penetration. The circuit court therefore granted a directed verdict as to the indicted charge of sexual battery.  However, the circuit court allowed the case to move forward on the lesser-included offense of fondling, and the defense presented its two witnesses.  After considering all the evidence and testimony, the jury convicted Shead of fondling.  The circuit court sentenced Shead to ten years in MDOC's custody, with five years to serve, five years suspended, and five years of supervised probation.  The circuit court also assessed Shead $2,100 in various fees and fines and ordered Shead's sentence for fondling to run concurrently with another sentence imposed in cause number 2016-0135.  Shead filed an unsuccessful motion for a judgment notwithstanding the verdict or, alternatively, a new trial.  Aggrieved, he appeals.

**DISCUSSION**

I.      **Exclusion of Witness Testimony**

¶15.    Shead argues that the circuit court erroneously limited the testimony of defense witness Temeka Campbell, who is K.W.'s mother and Williams's ex-wife.  We review the admission or exclusion of evidence for abuse of discretion.  *Dennis v. State*, 271 So. 3d 722,

728 (¶25) (Miss. Ct. App. 2018). Any "error in the admission or exclusion of evidence is not grounds for reversal unless the error affected a substantial right of a party." *Martin v. State*, 266 So. 3d 652, 667 (¶33) (Miss. Ct. App. 2018).

¶16.   In calling Campbell as a witness, the defense explained that it intended to use her testimony (1) to impeach Sergeant Wesley's testimony that she and her husband did not personally know Williams and (2) to give her opinion as to Williams's truthfulness and credibility.  The circuit court allowed the defense to use Campbell's testimony to impeach Sergeant Wesley's statements.  The circuit court questioned, however, how Campbell's testimony about Williams's credibility was "helpful to clearly understand . . . [a] witness'[s] testimony or to determin[e] a fact in issue."  In response, the defense relied on Mississippi Rule of Evidence 608(a), which provides:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.  But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

¶17.   Specifically, the defense stated that during Williams's cross-examination, it had spent much of the time asking Williams about his character for truthfulness and had attacked his character for truthfulness.  Shead's attorneys therefore reasoned that under Mississippi Rule of Evidence 608(a), they were then allowed to offer evidence about Williams's untruthful character.  From the argument made by Shead's attorneys, it appears the defense was relying on the last sentence of Rule 608(a) as the only basis for offering Campbell's testimony.  The State responded that "under the normal construction of [the] rules, . . . [it did not] think that

9

the party that attacked the credibility . . . [could] then come back and further attack it or even support it." The circuit court agreed and excluded Campbell's testimony about Williams's credibility and lack of truthfulness.

¶18. On appeal, Shead argues the circuit court erroneously limited Campbell's testimony because Williams's testimony and K.W.'s testimony had conflicted on two main points: first, whether K.W. disclosed a specific name when she relayed to Williams Roshanda's disclosure about the abuse, and second, whether Williams remained with K.W. while she spoke to officers. Shead also contends that an implication existed that Williams was closer to Sergeant Wesley than Williams had admitted.

¶19. Upon review, we find that these issues relating to whether Williams had a character for truthfulness or untruthfulness constituted collateral inquiries rather than "substantive, probative fact[s] relevant to the real issue involved, which was the guilt or innocence of . . . [Shead]." *Bingham v. State*, 723 So. 2d 1189, 1191 (¶9) (Miss. Ct. App. 1998). The State's case against Shead neither hinged on nor relied on Williams's testimony or credibility. Roshanda herself testified that Shead had touched her by putting his penis on her bottom. Investigator Hudson, Sergeant Wesley, Perryman, Johnson, and Daniels all testified that Roshanda disclosed to them that Shead had touched her in this manner. Furthermore, Nopper testified that Roshanda tested positive for chlamydia, which the jury later learned from a different State's witness was the same STD Shead had. Because an inquiry into Williams's character for truthfulness was neither relevant to whether Shead committed the crime of fondling nor tended to prove or disprove any material issue at hand, we conclude

the circuit court's exclusion of such evidence fails to warrant a reversal. Accordingly, we find this issue lacks merit.

## II. Lesser-Included-Offense Instruction

¶20. Shead asserts that no evidentiary basis existed for the circuit court to instruct the jury on fondling as a lesser-included offense of sexual battery. More specifically, Shead argues that his alleged conduct and the circumstances surrounding the alleged conduct fell short of proving the "lustful-intent" element necessary to sustain a conviction for fondling. He therefore contends that the circuit court erred by giving the jury the lesser-included-offense instruction on fondling, and he asks this Court to grant him a new trial. "A lesser-included-offense instruction may be given where there is some evidence supporting the lesser-included offense." *Williams v. State*, 240 So. 3d 436, 441 (¶9) (Miss. Ct. App. 2017). We review the jury instructions given by the circuit court for abuse of discretion. *Id.*

¶21. The grand jury indicted Shead for sexual battery under Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014), which states that "[a] person is guilty of sexual battery if he or she engages in sexual penetration with . . . [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." "Sexual penetration" includes "any penetration of the genital or anal openings of another person's body by any part of a person's body . . . ." Miss. Code Ann. § 97-3-97(a) (Rev. 2014).

¶22. After granting the defense's directed-verdict motion as to the indicted charge of sexual battery, the circuit court allowed Shead's case to proceed to the jury on the lesser-included offense of fondling. Our statutory law defines fondling as follows:

11

Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch[,] or rub with hands or any part of his or her body or any member thereof, any child under the age of sixteen (16) years, with or without the child's consent, . . . shall be guilty . . . .

Miss. Code Ann. § 97-5-23(1) (Rev. 2014).

¶23. As discussed, Shead's only argument appears to be that the State failed to prove that he touched Roshanda to gratify his lust or indulge his depraved licentious sexual desires. Mississippi caselaw clearly holds that fondling can be "a lesser-included offense of sexual battery," and a defendant's "specific, lustful intent can be inferred" from the circumstances of the touching. *Williams*, 240 So. 3d at 442 (¶13) (internal quotation mark omitted) (citing *Jenkins v. State*, 131 So. 3d 544, 550 (¶¶18-19) (Miss. 2013)); *see also Friley v. State*, 879 So. 2d 1031, 1035 (¶¶16-17) (Miss. 2004); *Ringer v. State*, 203 So. 3d 794, 798 (¶16) (Miss. Ct. App. 2016).

¶24. With regard to the "lustful-intent" or "lustful-purpose" element required for fondling, the Mississippi Supreme Court stated in *Friley* that the defendant, "by his very acts of grabbing [the victim], touching her genital area, and touching himself, . . . was gratifying his lust. There is absolutely no other reason why [the defendant] would have performed these acts." *Friley*, 879 So. 2d at 1035 (¶16). More recently, in *Ringer*, this Court explained that "while there was insufficient evidence to find penetration of the victim's anus, the proof showed that, at the very least, . . . [the defendant] rubbed his penis between the victim's buttocks" and that such evidence "undoubtedly amounted to a touching under the gratification[-]of[-]lust statute." *Ringer*, 203 So. 3d at 798-99 (¶17).

¶25. Here, Roshanda testified that she was sleeping alone in her parents' bedroom when a noise awoke her. Turning to her side, Roshanda saw that Shead was in the bedroom with her. Roshanda testified that Shead came over to the bed and that "[h]is private part was on . . . [her] behind." At other points during her testimony, Roshanda provided that Shead had "touched her" and that she had felt his penis on her bottom. Daniels, who testified about the forensic interview she conducted with Roshanda, stated that Roshanda disclosed finding her pants unbuttoned and Shead standing naked in the bedroom with her. In both the forensic interview and at trial, Roshanda stated that Shead grabbed a pillow to cover himself and left the bedroom. Subsequent medical testing revealed that both Shead and Roshanda (who was only eight years old at the time of the alleged incident) had chlamydia. Nopper, who conducted Roshanda's forensic medical examination, later explained during her testimony that chlamydia required "direct contact with infected body secretions, and so she [(Roshanda)] had to have . . . [come in] intimate contact with someone [who] actually had that same infection, a chlamydia infection" to contract the STD.

¶26. Based on such evidence, we find no abuse of discretion in the circuit court's decision to instruct the jury on fondling as a lesser-included offense of sexual battery. The record contained sufficient evidence to support the lesser-included offense of fondling, and the lustful-intent element of fondling could be inferred from Shead's actions as testified to by Roshanda and as described in her interview with Daniels. As stated in previous cases, "we find that there is 'no other reason why'" Shead would perform these actions, "except for the purpose of gratifying his lust." *Ringer*, 203 So. 3d at 799 (¶17) (citing *Friley*, 879 So. 2d at

13

1035 (¶16); *Jenkins*, 131 So. 3d at 550-51 (¶¶19-20)). We therefore find this assignment of error lacks merit.

### III.   Sufficiency of the Evidence

¶27.   Shead also contends there was insufficient evidence to support the jury's verdict. As with his previous assignment of error, Shead's argument focuses solely on the lustful-intent element of fondling. Shead asserts that for the same reason the "lesser-included[-]offense instruction for fondling was not supported by the evidence [(a lack of proof of intent to gratify his lust)], it necessarily follows that the evidence was insufficient for a conviction for fondling . . . ."

¶28.   In considering Shead's challenge to the sufficiency of the evidence,

> this Court must decide whether . . . [the evidence] allows a jury to find beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Ringer*, 203 So. 3d at 796 (¶3) (citation and quotation marks omitted) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005), *overruled on other grounds by Little v. State*, 233 So. 3d 288, 292 (¶¶19-20) (Miss. 2017)).

¶29.   As discussed, the State presented evidence that at the time of the alleged incident, Shead was nineteen years old, and Roshanda was only eight years old. Between her trial testimony and forensic-interview statement, Roshanda disclosed that she awoke to find her pants unbuttoned, that a naked Shead was standing in her parents' bedroom, and that Shead

14

touched her by putting his penis on her bottom. Shead then grabbed a pillow and used it to cover his penis as he left the bedroom. In addition, medical tests later determined that Roshanda had the same STD as Shead. Viewing this evidence in the light most favorable to the State, we conclude that a rational juror could have found beyond a reasonable doubt that the State proved the essential elements of fondling, including the element of lustful purpose or lustful intent. We therefore find this argument lacks merit.

### IV. Weight of the Evidence

¶30. Shead also asserts that the jury's verdict was against the weight of the evidence. Weighing the evidence in the light most favorable to the verdict, "we will only reverse a jury's verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Crawford v. State*, 282 So. 3d 1230, 1238 (¶27) (Miss. Ct. App. 2019) (internal quotation mark omitted).

¶31. Similarly to his previous two assignments of error, Shead's argument as to this issue focuses on an alleged lack of proof of lustful intent. As previously discussed, however, the jury can infer a defendant's lustful intent from the circumstances of the touching. *Williams*, 240 So. 3d at 442 (¶13). As also discussed, the State provided sufficient evidence from which a juror could find beyond a reasonable doubt that the State proved the lustful-intent element. Our caselaw holds that "the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." *Herbert v. State*, 281 So. 3d 851, 856 (¶24) (Miss. Ct. App. 2019) (quoting *Lindsey v. State*, 212 So. 3d 44, 47 (¶14) (Miss. 2017)). In addition to

Roshanda's trial testimony and forensic-interview statement, the State presented other supporting testimony and medical evidence to prove fondling, and the defense failed to provide any testimony or evidence that contradicted the allegations of abuse or Roshanda's testimony. Thus, after viewing the evidence in the light most favorable to the verdict, we cannot say that allowing the verdict to stand would sanction an unconscionable injustice. We therefore find this issue lacks merit.

## CONCLUSION

¶32. Because we find no error, we affirm Shead's conviction and sentence for fondling.

¶33. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**